# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF OHIO

Bruce Grulkowski )  CASE NO. _____
2304 Pleasant Meadows Dr. )
Batavia, Ohio, 45103 )  Judge _____
)
Plaintiff, )
)
)
v. )
)
)  **COMPLAINT**
)
Siemens Industry, Inc. )
4620 Forest Avenue )
Norwood, Ohio 45212 )  **JURY DEMAND ENDORSED HEREIN**
)
Defendant. )

## I.    Recitals-Jurisdiction-Parties

1.  This is an action under the Age Discrimination in Employment Act of 1967 (29 U.S.C. § 621 *et seq.*) and other provisions of the Federal and State law to correct unlawful employment practices on the basis of disability, age, retaliation, and related employment rights and to make whole plaintiff Bruce Grulkowski.

2.  Plaintiff (hereinafter also referred to as "Bruce Grulkowski," "Bruce," "Grulkowski," or "Plaintiff") also claims wrongful discharge in violation of public policy under common law.

3.  Bruce Grulkowski was an employee of Siemens Industry, Inc. full-time with benefits from approximately July 5, 1994 to February 14, 2020. Plaintiff has worked several times for Defendant.

4.  The defendant is Siemens Industry, Inc., more specifically Siemens' Norwood Manufacturing site located in Cincinnati Ohio, acting through its agents and employees (hereinafter "Siemens Industry, Inc.", "Siemens" or "Defendant").

5. On February 14, 2020, Defendant terminated the employment of Plaintiff.

6. On or around February 14, 2020 Plaintiff's employment with Defendant was terminated. Mr. Grulkowski was advised by telephone of his termination and verbally told it was due to a Level II safety violation, and was then instructed to call the next day with any questions.

7. Mr. Grulkowski did call the next day and left a voicemail message, which was never returned.

8. Mr. Grulkowski never received, in writing, any reason for his termination, nor was he ever advised in person before or after his termination via correspondence sent to his home, nor did Mr. Grulkowski receive email communications or other electronic communication.

9. Defendant improperly discharged the Plaintiff.

10. Defendant engaged in unlawful employment practices under 42 U.S.C. § 2000 e-5 (f) (1) and in violation of public policy.

11. The person implementing the unlawful practices on behalf of Defendant was John O'Connell, an agent of the Defendant.

12. At all relevant times Defendant has continuously been engaged in an industry affecting commerce within the meaning of Section 101(5) of the ADA, 42 U.S.C.A. § 12111(5), and Section 107(a) of the ADA, 42 U.S.C.A. § 12117(a), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C.A. § 2000e(g) and (h).

13. This court has jurisdiction over the legal actions alleged herein for the reasons that all the parties reside within or conducted activity within the United States District Court for the Southern District of Ohio, Western Division, and all the actions complained of occurred within the jurisdiction of the United States District Court for the Southern District of Ohio, Western Division.

14. Jurisdiction of this court is invoked pursuant to 28 U.S.C.A. §§ 451, 1331, 1337, 1343, and 1345, to secure protection and redress deprivation of rights secured by 29 U.S.C.A. §§ 626(e); 621 *et seq.* Plaintiff seeks declaratory relief pursuant to 28 U.S.C.A. §2201 and 2202. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of

1990 ("ADA"), 42 U.S.C.A. §12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.A. §2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C.A. §1981a.

15. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under the ADA, 42 U.S.C.A. §§ 12111(5), 12111(7).

16. Venue is proper under 28 U.S.C.A. § 1391 (b)(1) and (2).

17. A charge was filed with the Equal Employment Opportunity Commission (hereinafter "EEOC") by Plaintiff.

18. The notice of right to sue was issued by EEOC, as stated in Exhibit 1, attached hereto and made a part hereof.

19. The Defendant has further engaged in age discrimination under the Age Discrimination Act (hereinafter "ADEA") as provided under 29 U.S.C. §626 *et seq.*

20. Defendant has more than 20 employees and is obligated to follow the provisions of ADEA, and not engage in retaliatory practices.

21. Defendant, Defendant's agents, and Defendant's employees are all required to follow the provisions of the United States Code as detailed in the ADEA and not engage in protected retaliatory practices.


II.     **Facts**


22. Plaintiff re-alleges paragraphs 1 through  21, the same as if fully rewritten herein.

23. Plaintiff is 66 years old.

24. Plaintiff previously worked for Defendant without any termination for cause or adverse action taken against him.

25. The Plaintiff was hired by Defendant on or around June 15, 1994.

26. Mr. Grulkowski was hired as a Manufacturing Supervisor.

27. Mr. Grulkowski was responsible for supervising approximately forty-five manufacturing employees across several Stator and Coil Departments.

28. Defendant received online a personnel policy and procedure manual as known as employee manual.

29. When he was hired, Bruce was not required to sign a document acknowledging receipt of the employee manual.

30. Defendant's online employee manual includes a section setting forth its discipline policy and reasons for discipline.

31. Prior to the incidents that Bruce was wrongfully terminated; Bruce was never disciplined for anything relating to safety, had a good attendance record, and was considered a good employee by his superiors.

32. While employed by Defendant, Bruce's performance evaluations were fair.

33. Plaintiff's ending rate of pay was $81,000 per year in base pay.

34. His gross reported income, including overtime pay, from work for Defendant in 2019 was approximately $105,000.

35. Plaintiff is currently out of work.

36. Plaintiff has been out of work after his termination.

37. While employed by Defendant, Bruce Mr. Grulkowski never instructed any employees, much less the two employees alleged by Siemens Industry Inc., to perform a dangerous and potentially life-threatening work process over their objection.

38. This allegation in paragraph 37 has no basis in fact or law and is a malicious and unsubstantiated assault on Mr. Grulkowski's work records.

39. During the period of time in question, the stator, which can weigh anywhere from 800 to 15,000 pounds, is set into an 82-inch wide and seven-foot-deep chamber by a crane that uses an electromagnet (the stator, along with the electromagnet above, are shown in Exhibit 2).

40. While in the chamber, once the resin is absorbed by the stator, the stator is then lifted out.

41. This process of lifting is typically accomplished using an electromagnet.

42. The electro-magnet was taken out of service by Plaintiff on February 4, 2020 at the time material to Defendant's decision to terminate Plaintiff.

43. Mr. Grulkowski had proposed an alternative for lifting and placing the stator out of the chamber.

44. Mr. Grulkowski proposed utilizing an Industrial C hook, which would be attached to a crane. The Industrial C hook is essentially shaped like a dual-pronged instrument.

45. In layman's terms, the instrument appears as two prongs of a fork held horizontally.

46. The top prong would be connected to the crane for lifting the stator out of the chamber, while the lower prong would be guided into the center of the stator by using the handle.

47. The handle is located at the base of the Industrial C hook where the two prongs meet (at the location where the stem of a fork would typically be, to utilize the same visual analogy).

48. The handle would allow for the employee to maneuver the prong into the center of the stator, via one of the circular sides of the cylinder.

49. The stator is shaped like a cylinder.

50. Once the Industrial C hook had been successfully inserted completely into the stator by the employee, ensuring the windings on the stator were not damaged, the crane operators would test the hold by lifting the stator approximately 1-2 inches from the ground, and then setting the stator completely back on the ground.

51. After the test had been completed as stated in Paragraph 50, the employee would utilize the same safety protocols to clean the area immediately around the ladder of resin, along with hooking the ladder to prevent slippage, and then the employee would safely exit the chamber via the ladder.

52. Only after the employee had safely exited the chamber would the stator be lifted fully out of the chamber.

53. No employees would be present in the chamber when the stator is initially placed in the chamber, or upon its removal from the chamber.

54. Defendant Siemens Industry's claimed that Mr. Grulkowski's instructions were to "manually position the straps on either end of the stator."

55. Paragraph 54 is not accurate because there are no straps involved in Mr. Grulkowski's proposal.

56. Siemens claims "[the employees] then remain inside the confined chamber while the 5,000 pound stator is lifted out above their heads."

57. Paragraph 56 is not accurate and directly misleading.

58. Mr. Grulkowski's proposal was that the employees would only be present in the chamber for the lifting of the stator approximately 1-2 inches above the ground.

59. The employees would then exit the chamber safely before the stator was lifted out of the chamber.

60. Siemens reference to OSHA Regulation 1910.179 (n)(vi), which states "the employer shall require that the operator avoid carrying loads over people." In other words, crane operators must never move a suspended load over other employees.

61. The crane operators must also maintain a 45 degree angle safety zone from the position of the suspended load.

62. An infraction of this OSHA code never occurred under Mr. Grulkowski's watch, and neither would an infraction of this code have occurred under Mr. Grulkowski's proposal.

63. To reiterate, in the proposal the crane operator would have lifted the stator approximately 1-2 inches while the employee was present in the chamber, and then set the stator back on the ground.

64. Under Plaintiff's proposal, no employee would be present in the chamber when the stator was lifted completely from the chamber.

65. Siemens claims that the employees "climb inside the heated chamber" and that "because the stator would have been coated with resin, [the employees] would have been standing on a slippery surface and using a ladder on the same slippery surface to emerge from the chamber, which could lead to a slip and fall or worse".

66. Siemens fails to note that these employees all have prior experience working with the heat and resin.

67. Under typical conditions with the electromagnet, the chambers are cleaned immediately after the stator is lifted from the chamber to prevent the resin from having time to cool and coagulate.

68. The same protocols found in Manufacturing Method 1655001 would be utilized at the beginning and end of Mr. Grulkowski's proposed process.

69. This Manufacturing Method, developed to protect the employees and the equipment, lays out the process.

70. The process begins with lowering the employee and the ladder into the chamber where the stator is located.

71. Then, the employee briefly stores the ladder into a small cavern while the employee safely squeegee's the surrounding area of heated resin.

72. Finally, the employee would lower the ladder back down into place and hook the ladder to prevent slippage before exiting the chamber.

73. The employees have the proper equipment, prior experience, and training with both the heated conditions and the resin residue, and thus would be able to navigate the chambers with caution and safety.

74. Mr. Grulkowski, prior to implementing his proposal, had called a meeting with all three operators that were involved with the placement of the stator into the liner and removal of the stator from the liner.

75. Two of the operators then talked to Derrek Cartwright, the union safety representative.

76. Derrek Cartwright then presented Mr. Grulkowski's idea to John O'Connell, the plant manager.

77. John O'Connell, the plant manager, expressed his opinion that it may be unsafe and stated that the proposal would not be implemented.

78. John O'Connell, on February 6, 2020, sent out an email stating the proposal was a "grievous near miss".

79. This phrase "grievous near miss" is an inaccurate allegation.

80. The process was never implemented.

81. Also present at the meeting to discuss the possible procedure was Marcus Morgan of Human Resources, Claude Turner the Production Manager, and Carl Lyttle the Department Manager.

82. At no time did Mr. Grulkowski instruct any employees to perform a dangerous and potentially life-threatening work process.

83. Mr. Grulkowski's idea of using the Industrial C hook (explained thoroughly herein) was strictly a proposed idea to review, along with other possible alternatives, while the electro-magnet was unavailable.

84. Attached hereto and labeled Exhibit 3 is HR – 40 standards of conduct policy of Siemens, that were in existence at all times material hereto.

85. Only under a Level I violation will immediate termination occur.

86. Mr. Grulkowski presented his proposal on February 6, 2020 at a joint meeting.

87. Mr. Grulkowski continued to work until February 11, 2020 when he was suspended, and he was then terminated on February 14, 2020.

88. Mr. Grulkowski was advised by telephone of his termination and verbally told it was due to a Level II safety violation and was then instructed to call the next day with any questions.

89. Mr. Grulkowski never received, in writing, any reason for his termination, nor was he ever advised in person before or after his termination via correspondence sent to his home, nor did Mr. Grulkowski receive email communications or other electronic communication.

90. Mr. Grulkowski was terminated because of his age.

91. Under a Level 1 violation, the consequence is immediate suspension, and this did not occur. Therefore, we presume that it was not a Level 1 violation.

92. A violation must be willful, intentional, and deliberate, and there is nothing in the facts that indicates an idea, which was never implemented, approaches the standard of willful, intentional, or deliberate.

93. Siemens did not provide one document, report, statement, affidavit, or supporting evidence to substantiate any of their allegations for termination.

## III.   Causes of Action

### A.   Age Discrimination, Age Discrimination in Employment Act

94. Plaintiff re-alleges paragraphs 1 through 93 as if fully rewritten herein.

95. Plaintiff at the time of his termination was over 40 years of age, and the action of the Defendant as stated herein resulted in a violation of the ADEA.

96. Throughout the entirety of Plaintiff's employment with Defendant, Plaintiff has performed to Defendant's satisfaction at all times material to this complaint, as evidenced by, without limitation, Plaintiff's longevity of employment and position of responsibility.

97. Beginning with Plaintiff's assignment to P-3, Defendant has discriminated against Plaintiff on this basis of his age by holding him to a higher standard in the terms and conditions of his employment than his similarly situated younger coworkers.

98. Since October 2015, Defendant has created a discriminatory work environment for Plaintiff resulting in a deterioration of the terms and conditions of his employment as compared to his younger coworkers.

99. In contrast to Defendants' assertion, Plaintiff was not insubordinate.

100. Further, Defendant did not terminate the employment of Plaintiff's similarly situated younger coworkers.

101. Any reasons proffered by Defendant for terminating Plaintiff's employment are pretext for discriminating against Plaintiff on the basis of his age.

102. These acts and omissions of Defendant constitute unlawful and willful discrimination against Plaintiff on the basis of his age, in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C.A. §§ 621 et seq.

103. As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendant, Plaintiff has suffered injury, including, but not limited to, lost future wages and benefits, emotional harm and loss.

104. Plaintiff's age was a contributing factor in the decisions by Defendant to terminate him.

## B.     Pretextual Reasons Given for Discharge

105. Plaintiff re-alleges paragraphs 1 through 104 as if fully rewritten herein.

106. On or about February 14, 2020, Siemens Industry, Inc. advised Plaintiff that his employment would be terminated, effective immediately, and did not advise Plaintiff of the reason for his termination.

107. At all relevant times, management from Defendant participated in the wrongful termination of plaintiff.

108. Siemens Industry, Inc. informed Plaintiff that he was being terminated on February 14, 2020 for having exercised poor judgment in connection with a proposal for how to continue work while the electromagnet was unavailable.

109. Plaintiff was never insubordinate.

110. Plaintiff was never disciplined and never received any document, report, statement, affidavit, or supporting evidence to substantiate any of their allegations for termination.

111. Defendant used the false and unsubstantiated allegations of a Level II safety violation on as a pretext for unlawful discrimination of the basis of age in discharging the Plaintiff.

112. A younger employee under the age of 40 years old replaced Plaintiff.

### C.    Wrongful Termination in Violation of Public Policy

113. Plaintiff re-alleges paragraphs 1 through 112 the same as if fully rewritten herein.

114. Ohio is an at-will employment state, but an exception exists under federal and state law for wrongful termination in violation of public policy, and federal and state law cannot be violated if applicable.    .

115. Plaintiff's dismissal was motivated by his age.

116. Defendant had no legitimate business reason for discharging Plaintiff.

### D.    Termination as Breach of Employee Manual/ Employment Contract

117. Plaintiff re-alleges paragraphs 1 through 116 as if they were re-written herein.

118. Siemens Industry, Inc. has an employee manual.

119. The terms of the employee manual, which Plaintiff observed through Siemens Industry, Inc.'s implementation of the policies and procedures in the manual, provide for a hierarchy of types of discipline for unsatisfactory performance, starting with verbal warnings and ending in dismissal. This is titled HR-40 Standards of Conduct Policy.

120. The personnel policies and procedures of Siemens Industry, Inc. as evidenced by the terms in the employee manual create an employment contract with Siemens Industry, Inc. employees such that under a Level 1 violation, the consequence is immediate suspension, and this did not occur. Therefore, Plaintiff presumes that it was not a Level 1 violation.

121. A violation must be willful, intentional, and deliberate, and there is nothing in the facts that indicates an idea, which was never implemented, approaches the standard of willful, intentional, or deliberate.

122. Siemens Industry, Inc. failed to follow their policy and procedure listed in the employee manual.

### E.     Retaliation

123. Plaintiff re-alleges paragraphs 1 through 122 as if they were re-written herein.

124. The Defendant has engaged in retaliation in violation of the federal law under the EEOC and the Defendant is not allowed to fire, demote, harass or otherwise retaliate against an individual for filing a charge of discrimination or participating in discrimination proceedings or otherwise opposing discrimination.

125. Plaintiff has been discriminated against based on his age.

126. Defendant has engaged in conduct that coerces, intimidates, threatens, harasses or interferes with the rights granted to the Plaintiff by the ADA, ADEA, and Federal and State law.

127. The actions of Defendant have resulted in adverse action against Plaintiff, who, as a covered individual, is subject to be a protected activity under the ADA and the ADEA.

128. The actions of the Defendant are not based on reasonable, good faith belief and are not compliant with sound legal practices or the law.

129. On February 14, 2020, Defendant terminated Plaintiff's employment for the purported reason that did not exist.

130. In contrast to Defendant's assertion, Plaintiff did not engage in conduct justifying termination.

131. As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendant, Plaintiff has suffered injury, including, but not limited to, lost and foregone wages and physical and emotional harm.

### F.     ADEA

132. Plaintiff re-alleges paragraphs 1 through 131 as if fully rewritten herein.

133. The termination of the employment of the Plaintiff was in reckless disregard of the requirements of the ADEA.

134. Defendant's termination of the employment of the Plaintiff among other illegal criteria was based on age and in violation of the ADEA and said violation was willful within the meaning of the ADEA.

## III. Damages

### H.      Economic Losses

135. The yearly compensation of the Plaintiff based upon his years of age and years in the employment of Defendant receiving in 2019 an amount of approximately $105,000.

136. In addition, the Plaintiff received lost benefits, wages, additional contributions to retirement, paid vacation, and other benefits.

137. In addition to the loss of benefits as specified above, Plaintiff will incur additional economic losses and loss of benefits including but not limited to future fringe benefits that Defendant provides for its employees.

### H.      Legal Fees

138. Plaintiff re-alleges paragraphs 1 through 137 as if they were re-written herein. Plaintiff has incurred legal fees and will continue to incur legal fees as the result of his wrongful discharge and retaliation for exercising his rights under Federal and State law and is entitled to reasonable attorney fees. Plaintiff is also entitled to court cost incurred as a result of this action.

**Prayer for Relief**

WHEREFORE, Plaintiff requests judgment against the Defendant and requests that this court:

139. Order Defendants to make whole Plaintiff by providing him with appropriate lost earnings, insurance premiums, benefits with prejudgment interest, in amounts to be proved at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including, but not limited to, reinstatement of Plaintiff.

140. Order Defendants to make whole Plaintiff by providing compensation for pecuniary losses, including, but not limited to, costs to be incurred for health and life insurance premiums and costs of seeking employment, in amounts to be determined at trial.

141. Issue an order requiring the Defendant to reinstate Plaintiff as a full-time employee in his previous position.

142. Grant Plaintiff an award of compensatory damages consisting of back wages, future wages, and other benefits for which he would have been entitled had he been continuously employed in his position as a full-time employee with Defendant for at least an additional period of 5 (five) additional years, all in excess of $25,000.00.

143. Grant Plaintiff an award of damages in excess of $25,000.00 for the loss of retirement benefits through his employment with Defendant and penalties, forfeitures and other costs of premature liquidation of Plaintiff's retirement benefits.

144. Grant Plaintiff an award of damages for mental anguish according to proof in excess of $25,000.00.

145. Grant Plaintiff an award of his attorney fees and costs of this action.

146. Grant Plaintiff an award of additional compensatory damages in excess of $25,000.00.

147. Grant Plaintiff an award of punitive damages in excess of $25,000.00.

148. Determine that Plaintiff is and at all relevant times was qualified to fill his position with Defendant and that the Defendant has discriminated against the Plaintiff on the basis of his age.

149. Grant judgment in favor of Plaintiff for the loss of his benefits, including but not limited to retirement, health insurance, life insurance, loss of sick pay, loss of vacation pay, loss of overtime, and other benefits.

150. Award such other legal and equitable relief as justice requires.

151. Provide for such other and further relief as the court may deem just and proper.

Respectfully submitted,

James A. Whitaker (0000992)
Attorney for Plaintiff
226 Reading Road
Mason, Ohio 45040
(513) 398-1910
Fax (513) 398-0181
jim@whitakerattorneys.com

**Jury Demand**

Plaintiff's demand a trial by jury of the maximum number of jurors as provided by law.

Respectfully submitted,

James A. Whitaker (0000992)
Attorney for Plaintiff
226 Reading Road
Mason, Ohio 45040
(513) 398-1910
Fax (513) 398-0181
jim@whitakerattorneys.com

## Notice of lawsuit and request to waive service of summons

Plaintiffs have contemporaneously with the filing of this complaint served upon the Defendants

notice of lawsuit and request to waive service of summons along with a waiver of service of summons.

Respectfully submitted,

James A. Whitaker (0000992)
Attorney for Plaintiff
226 Reading Road
Mason, Ohio 45040
(513) 398-1910
Fax (513) 398-0181
jim@whitakerattorneys.com



PLAINTIFF'S
EXHIBIT
1

EEOC Form 161 (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: | Bruce Grulkowski<br>2304 Pleasant Meadows Drive<br>Batavia, OH 45103 | From: | Cincinnati Area Office<br>John W. Peck Fed. Bldg<br>550 Main Street, Suite 10-191<br>Cincinnati, OH 45202 |
|---|---|---|---|

|  | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | | |
|---|---|---|---|
| EEOC Charge No.<br><br>473-2020-01217 | EEOC Representative<br>**Amy M. Trzop-Vos,**<br>**Investigator** | | Telephone No.<br><br>**(513) 914-6008** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Ramiro Gutierrez/atv
*Digitally signed by Ramiro Gutierrez/atv*
*DN: cn=Ramiro Gutierrez/atv, o=EEOC Cincinnati Area Office,*
*ou=Area Director, email=RAMIRO.GUTIERREZ@EEOC.GOV, c=US*
*Date: 2020.12.29 11:05:25 -05'00'*

**Ramiro Gutierrez,**
**Area Office Director**

12/30/2020

*(Date Issued)*

Enclosures(s)

cc:
Katie Emo
Crowell & Moring LLP
1001 Pennsylvania Ave. NW
Washington, DC 20001

Shane Kawka
**Lead Attorney, Employment**
Siemens Corporation
301 Lindenwood Dr., Ste. 380
Malvern, PA 19355

James A. Whitaker, Esq.
WHITAKER ATTORNEYS, LLC
226 Reading Road
Mason, OH 45036

Enclosure with EEOC
Form 161 (11/2020)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was issued to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 -- not 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*



PLAINTIFF'S
EXHIBIT
2



**PLAINTIFF'S EXHIBIT**

3

HR-40 Standards of Conduct Policy

The Human Resources Department will be consulted in all matters in which disciplinary action may be involved. Once the investigation is completed, a solution will be derived which the end result can range from any of the following, but not limited to – clearance of the situation, verbal counseling, written warning, suspension, or termination. If warranted, the employee may be temporarily suspended pending the outcome of an investigation into the matter. Suspensions may be paid or unpaid depending on the type of infraction committed and the circumstances of each individual case. The determination of this type of suspension will be the responsibility of the manager in agreement with the respective Human Resources Consultant and Labor Relations in cases where employees are represented by unions to ensure consistency across the businesses. If warranted by circumstances or the nature of the alleged incident, a matter may be referred to the Compliance Officer, Security, and/or the Legal Department for additional input or handling.

In cases in which an employee has been found to have committed a compliance violation warranting a formal warning or other serious disciplinary action, the employee's Siemens Leadership Framework (SLF) capabilities evaluation, income and development actions in the documented Performance Management Process (PMP) may be affected.

In situations involving job performance issues, the employee may be placed on a Performance Improvement Plan in addition to any disciplinary action that may be taken.

Except in circumstances where immediate action is required, all violations of this Policy and any concurrent disciplinary action should be reported to and reviewed by the respective Human Resources Consultant prior to taking any action. Nonetheless, the respective Human Resources Consultant must be informed as soon as possible after action is taken- and before documentation is completed.

Any questions related to this Policy should be brought to the attention of your manager or respective Human Resource Consultant.

## Level I Violations

The following types of misconduct will be considered extremely serious and will result in immediate termination:

1. Willful, intentional, and deliberate violation of a "high risk" Company safety rule that could result in death or serious injuring covering electrical safety, lock out/tag out, working at height, confined space entry/hazardous atmospheres, rigging and lifting, and overriding safeguards.

2. Unauthorized use or possession of firearms, live ammunition, explosives, or other weapons on Company premises or associated Company premises.

3. Taking, diverting, receiving or possessing, fraudulently, without authorization, goods, materials, equipment, funds or other property belonging to the Company, another employee, a contractor, a vendor, a customer or another individual.

4. Engaging in any form of willful or deliberate fraudulent activities and/or attempting to cover up or conceal a fraudulent act.

5. Any involvement in criminal or illegal activities on Company or associated Company premises.

6. Failure to report, no call no show, three (3) consecutive scheduled work days to your manager or other individuals designated by management.

## Level II Violations

The following types of misconduct will be considered very serious and may result in discipline, up to and including immediate termination. The normal discipline for these violations will be suspension and/or final letter of warning, unless there are mitigating or aggravating circumstances which support termination or a lower penalty. In no case will the discipline for violating these standards be less than a formal written warning, which is then transferred to and made a part of the employee's personnel file. Repeated or gross violations, regardless of whether the offense is similar or different in nature to prior offenses, will result in an appropriate level of discipline which may include suspension or termination.

1. Violation of general safety rules or standards, not including those listed in level I.

2. Any form of fighting, violence, or other disorderly conduct including the use of threatening language, which endangers the safety of a person or property.

3. Deliberate damage, sabotage, theft, or misuse of Company property, or the property of others.

4. Indecent conduct including any and all acts of harassment, posting, possessing or distributing material that may be considered offensive (including access of inappropriate material via

HR-40 Standards of Conduct Policy

computer).

5. Misrepresentation and/or falsification of records, reports or other documents.

6. Any conflicting interest (financial or other, direct or indirect) which may affect or might reasonably be thought to affect an employee's ability to make sound judgment and decisions in the interest of the Company.

7. Insubordination including failure to carry out instructions or assignments consistent with position requirements (unless an employee has demonstrated a sincere belief that the instruction given is contrary to law or is immediately dangerous to life or health).

8. Noncompliance with the Company's or Sector's Drug and Alcohol Policy.

9. Noncompliance with the Company's Non Solicitation Policy.

10. Failure to protect proprietary Company information and/or technology, or the reproduction of the same, without proper authority, or the failure to promptly report discovery of any loss or improper disclosure of the same.

11. Unauthorized access, misuse, or other security violations of Company-owned or leased computer systems or software.

12. Concealing, or knowingly permitting to conceal, defective work that might hamper production.

13. Sleeping during working hours.

14. Noncompliance with other Company policies where the Company considers such noncompliance extremely serious based on the facts and circumstances.

15. Non-compliance with company issued credit card guidelines.

16. Substantive violations of financial (including travel and entertainment) policies.

17. Violations of the Company's Social Media Policy.

**Level III Violations**

The following types of misconduct by an employee will be considered very serious and may result in discipline up to and including termination. In no case will the penalty consequence for violating these standards be less than a formal written warning, which is then transferred to and made a part of the employee's personnel file. Repeated or gross violations, regardless of whether the offense is similar or different in nature to prior offenses, will result in an appropriate level of discipline which may include suspension and/or final letter of warning or termination.

1. Careless waste or abuse of Company materials and resources.

2. Failure to properly report a work-related injury on the day it occurs, or immediately thereafter when it is reasonably understood that an injury has occurred.

3. Unauthorized reproduction of Company information and property including photographs, print copies, electronic copies, video copies on Company or associated Company premises.

4. Gambling or conducting gambling activities on Company or associated Company premises.

**Level IV Violations**

The following types of misconduct by an employee will be considered a serious offense and will result in discipline ranging from a documented verbal warning to termination for repeated violations. The discipline imposed in these matters shall be no less than a documented verbal warning, which is then transferred to and made a part of the employee's personnel file. Repeated or gross violations, regardless of whether the offense is similar or different in nature to prior offenses, will result in an appropriate level of discipline which may include suspension and/or final letter of warning or termination.

1. Smoking in prohibited areas.

2. Excessive absence, absence without justifiable cause, or habitual tardiness. Attendance policies may vary by Sector or locale.

HR-40 Standards of Conduct Policy

3. Unsatisfactory job performance or inability to meet minimum position requirements.

4. Posting unauthorized notices on Company or associated Company premises.

5. Improper operation of Company vehicles and/or Company rental vehicles.

6. Other violations of financial policies.

**Conduct off the Company Premises**

Criminal conduct outside Company or associated Company premises that has the potential for creating a negative image of the Company or having a negative effect on employees or the surrounding community, may result in discipline. The degree of discipline, or discharge in severe cases, will depend on the facts and particular circumstances.

**VI DISCIPLINARY ACTION**

Violation of this Policy will subject the individual to appropriate disciplinary action, up to and including termination of employment.

**VII RESPONSIBILITIES**

*Employee:*

- Comply with the Company's established policies, procedures and standards of conduct.

- Report to his/her manager or Human Resource Consultant any observed actions of misconduct or personal involvement of misconduct.

*Manager:*

- Report any observed actions of misconduct or personal involvement of misconduct to his/her Human Resource Consultant.

- Counsel those employees who do not comply with the Company's established standards of conduct and take corrective action as appropriate.

- Discipline employees who violate company policies and procedures.

- Ensure that a prompt and thorough investigation is conducted together with his/her Human Resource Consultant.

- Consult with his/her Human Resource Consultant before implementing disciplinary actions other than when "immediate suspension" is necessary.

- The immediate engagement of the next level of management and respective Human Resources Consultant is required before discharging an employee.

*Human Resource Consultant:*

- Work directly with the employee and his/her manager to ensure that the appropriate action is carried out in accordance with the nature and severity of the violation.

- Review recommendations for discharge and review with the Legal department (if necessary).

- Ensures that any verbal or written warning is transferred to and made a part of the employee's personnel file.

| | |
|---|---|
| Policy Name: | Standards of Conduct |
| Policy No: | HR-40 |
| Effective Date: | 06/01/17 |
| Revision No: | 4.2 |
| Process Owner: | HR USA |
| Author: | HR USA |

Printed copies of policies are for reference only and may not contain all policy-related information; please refer to AskHR On Demand for the entire document and the most up-to-date version of policies and supporting information.

## I PURPOSE

Certain rules and regulations are necessary not only for efficient business operations but also to provide a safe, comfortable and professional work environment for all. To promote these goals, the Company expects all employees to conduct themselves in a manner that does not interfere with operational objectives, does not discredit Siemens, and is not offensive or harassing to co-workers, customers or other individuals.

## II SCOPE

Unless prohibited by law, collective bargaining agreement or otherwise, this Policy applies to all Siemens employees in the United States.

## III DEFINITIONS

N/A

## IV CONTENT

Employees are expected, among other things, to:

- Treat co-workers, vendors, visitors and others with respect and courtesy;

- Refrain from behavior or language that may be considered offensive or harassing;

- Wear clothing appropriate for the work being performed;

- Comply with all Company policies; and

- Maintain a clean and safe work area at all times.